(No. 15116.—Decree affirmed.)

L. H. ROBAR, Appellee, *vs.* MARY ISHAM, Admx., Appellant.

*Opinion filed January 16, 1924—Rehearing denied Feb. 13, 1924.*

1. SPECIFIC PERFORMANCE—*when oral waiver or modification of provision of written contract is effective.* Where parties to a written contract mutually consent to oral modifications and to non-performance of certain provisions and later comply with other terms of the contract, each party is estopped to deny the efficacy of the modifying agreement and cannot set up the non-compliance to defeat specific performance, provided the proof is strong that such waiver or modification was assented to.

2. SAME—*when vendee waives provision for examination of abstract.* Although a contract for a conveyance provides that the vendor shall present the abstract for examination by a certain date, a statement by the vendee, when the vendor informs him that he has the abstract ready, that he does not desire to examine it, followed by subsequent acts after the time for furnishing the abstract which indicate that the vendee regarded himself still bound by the contract, constitutes a waiver of the requirement as to furnishing the abstract for examination.

3. SAME—*questions not raised in the trial court are waived.* Grounds for reversing a decree for specific performance of a conveyance are waived if not made in the trial court, and the defendant cannot contend, on appeal, that the abstract does not show title, where no such contention was made in the court below.

4. SAME—*when court may deny motions for amendment and for continuance.* Motions made at the close of the evidence to amend the answer to a bill for specific performance so as to set up a new defense and to continue the case for the sole purpose of obtaining the depositions of witnesses who resided outside the State may be denied, in the discretion of the court, where it appears that the additional defense might have been made in the first instance and that there was not due diligence in procuring the depositions beforehand.

APPEAL from the Circuit Court of Grundy county; the Hon. SAMUEL C. STOUGH, Judge, presiding.

H. B. SMITH, (ALFRED BECK, of counsel,) for appellant.

FRANK H. HAYES, for appellee.

Mr. Justice Duncan delivered the opinion of the court:

This is an appeal of Mary Isham, administratrix of the estate of Elmer B. Isham, deceased, from a decree of the circuit court of Grundy county decreeing the specific performance of a contract for the sale of a tract of land located in the State of Wisconsin, entered into by L. H. Robar, appellee, as vendor, and Elmer B. Isham as vendee, and dismissing the cross-bill of Isham for want of equity. Isham died during the pendency of the appeal, and the administratrix aforesaid has been substituted as appellant.

The contract, which is set out *in hæc verba* in the bill, acknowledges the payment of $1000 by note and provides for the further payment of $27,160 as follows: $5000 in cash March 1, 1921, $1080 by note bearing six per cent interest, due March 1, 1923, and the remainder by assuming two existing mortgages for $12,793.50 and $7206.50. A deed and possession of the premises were to be delivered to Isham on March 1, 1921, and a merchantable abstract was to be furnished to Isham for examination by November 1, 1920. Isham was to have thirty days from the delivery of the abstract to examine it and to return it to appellee with his objections, and appellee was to have a reasonable time in which to perfect the same and complete the title if objections were made. Isham was a resident of Mazon, in the county of Grundy, Illinois. He owned a farm near said town and had farmed practically all of his life but at the time the contract was made he was engaged in no particular business. Appellee was a resident of Delavan, Wisconsin, and was engaged in the real estate and insurance business. Isham had had previous dealings with appellee, and about a year before this contract was entered into he had purchased a farm from appellee and had resold it at a profit. About the middle of October, 1920, Isham was visiting his brother, Wilbur Isham, at Delavan, Wisconsin, and while there accompanied appellee on several trips in the country which were made for the purpose of

showing prospective buyers the farms that appellee had for sale. Appellee and Wilbur Isham were jointly interested in the farm described in this case but the deed and title had been taken in appellee's name. During their visits on those trips Isham became interested in the tract of land known as the Mills farm. About that time there was considerable exchange of property in that locality and large numbers of prospective buyers were looking over the land and prices had been advancing. It appears from the evidence that Isham's purpose was to re-sell for a profit any land that he bought, and the selling possibilities of the Mills farm were discussed between appellee and Isham. These two parties met at the home of Wilbur Isham on the evening of October 16, 1920, and after much discussion entered into the contract to which reference is above made. Isham then directed appellee to show the farm to prospective buyers and to re-sell it for a profit to him of about $20 an acre. On the last day previous to the signing of the contract in the evening, Isham had directed appellee to show the farm to other prospective buyers as his farm and to sell it for him. While it was disputed by Isham in his testimony, we think it is clearly shown by the evidence that on the morning of the day after the contract was made Isham called at appellee's office and while there appellee told him that he had the abstract ready to deliver to him at that time; that Isham stated to him, in answer to appellee's offer of the abstract, "If the abstract is good enough for you it is good enough for me;" that appellee then made a memorandum on a piece of paper, with the knowledge of Isham, and pinned it to the contract, reciting, in substance, that the examination of the abstract had been waived. This occurred on a Sunday. The note for $1000 which Isham had given to appellee as part payment became due on November 16, 1920, and on that date Isham sent to appellee a check for $1005 in payment of the note. The farm had previously been rented, at the request of Isham, in his name,

and the tenants had delivered their notes to him for $1399 in payment of the rent for one year. These latter two facts are strong corroboration of appellee's claim that Isham, at the time aforesaid, waived the presentation to him of the abstract for examination, in connection with the fact of the written memorandum being pinned to the contract. In December, 1920, Isham became ill and was confined in the hospital at Morris, Illinois, for several months. A few days prior to March 1, 1921, (the day the deed and abstract brought down to date were to be delivered,) appellee went to Morris, to the hospital where Isham was confined, but was informed that Isham was too ill to transact any business, and the deed for that reason was not delivered according to the terms of the contract. Appellee testified that he had the deed prepared, signed and witnessed, the taxes paid, and was ready to deliver the deed and abstract, brought down to date, on that day but was prevented from doing so because of the illness of Isham. Nothing further was done except the passing of several letters between the parties until June 6, 1921, when appellee went to Mazon to tell Isham he was ready to complete the deal. Isham refused to accept the deed and to carry out the contract, stating as his ground therefor that no abstract had been tendered, and when his attention was called to the fact that he had stated, in substance, that he did not desire to examine the abstract, he replied that any talk or agreement on his part not in writing could not affect the written contract. About December 1, 1920, land values in the vicinity in which the farm was located began to decrease. Isham about that time began a course of correspondence with appellee which shows that at first Isham was urging appellee to sell his farm immediately at a profit, as he did not care to keep it, and that appellee had promised that he would try to sell it for him. His later letters to appellee were to the effect that he desired to get out of the contract and wanted appellee to take the farm off his hands and return

the money he had paid, and that he, in turn, would surrender the rent notes to appellee.

The first question that arises in this case is whether or not there was a waiver by Isham of the tender and examination of the abstract on the day mentioned in the contract for the delivery of the abstract. It is a well settled principle of law that where parties to a written contract mutually consent and acquiesce in the oral modifications and in the non-performance of certain provisions thereof and later comply with the other terms of the contract, each party is estopped to deny the efficacy of the modifying agreement and cannot set up such non-compliance of provisions thus waived in order to defeat specific performance, provided the proof is strong that such waiver or modifications have been assented to. (*Ames* v. *Witbeck,* 179 Ill. 458; *Kissack* v. *Bourke,* 224 id. 352; *Zempel* v. *Hughes,* 235 id. 424.) The proof is clearly against appellant on this question of waiver in this case, and it leaves no doubt in the minds of the court that Isham made the statement to appellee aforesaid, and thereby, and by his subsequent acts, waived the requirement that appellee furnish the abstract for examination according to the terms of the written contract.

On the trial below the attorney for Isham, when asked by the trial court if he found any fault with the title of appellee to the land in question, answered that he only found fault with the form of the abstract and not with the title. The objections to the abstract were, in substance, that the captions to the extensions found in the abstract did not properly describe the land, and also that the abstract was merely an index to the title rather than an abstract of title. The attorney for Isham stated positively to the court that he thought the abstract showed title in appellee or that he was the owner of the land. On this appeal it is now sought by appellant to contend that the abstract does not show title. There are also several other contentions argued by appellant as grounds for reversing this decree which were not

made in the court below and therefore cannot be made here because waived. *Vincent* v. *McElvain,* 304 Ill. 160.

Appellant also raises the question that the lower court erred in overruling Isham's motion to file an amendment to his answer setting up the statute of Wisconsin which declares transactions made on Sunday void. She also argues that the court erred in not continuing the case for the purpose of taking depositions on Isham's motion. Both of these motions came at the close of the evidence in the case and after the attorney for Isham had been given a short time to secure the presence of the witnesses whose depositions he afterwards decided to take, and upon an agreement that the evidence of the two witnesses should be the only evidence for which the case would be delayed. Isham was disappointed in not getting the witnesses in court, but under the agreement aforesaid the court was warranted in denying both motions, for the reason that there was not due diligence used in making the additional defense and in procuring beforehand the depositions of the witnesses who were out of the State.

The defense of fraud and conspiracy set up in the answer of Isham and also in his cross-bill is not sustained as there is no evidence in the record to support it. The evidence is clear and strong that the contract was fairly entered into by both parties and that Isham used his own judgment throughout the entire deal, and that the real reason for failing to comply with the contract was the fact that the value of the land had decreased since the contract was made. There does not appear to be any merit to any defense made by Isham below or by appellant in this court, and if there was any it was waived by the failure to make the defense below. The evidence clearly shows that appellee had done everything that he was required to do to perform his part of the contract that was not waived as aforesaid, and that he was entitled to specific performance of the contract under the law of Illinois and also under the law

of Wisconsin, as the law of both States is the same on the question of waiver of the contractual rights in this character of cases.

The decree of the circuit court is affirmed.

*Decree affirmed.*