Ernest J. Svenson, Plaintiff-Appellant, v. American National Bank and Trust Co., a Banking Corporation of Rockford, Illinois, as Trustee, and Gust J. Peterson, Defendants-Appellees.

Gen. No. 66–130.

Second District.

October 4, 1967.

Rehearing denied December 1, 1967.

Maynard, Maynard & Brassfield, of Rockford, for appellant.

Miller, Thomas, Hickey & Collins, of Rockford, for appellees.

MR. JUSTICE MORAN delivered the opinion of the court.

The plaintiff, Ernest J. Svenson, brought this proceeding in equity to enforce his averred right to a Trustee's Deed from the corporate defendant to a 85/100ths interest in a land trust, and Gust J. Peterson, by way of counterclaim, sought to enforce his opposing right to a 30/100ths interest in the trust. The chancellor found in favor of Peterson and Svenson has appealed.

During the years 1941 through 1948 inclusive, the plaintiff and the defendant, Gust J. Peterson, were employed by John S. Barnes Company in Rockford, Illinois. Plaintiff had been appointed to the management committee of the company and was to receive the sum of $3,000 each year for his services, but because he was absent for extended periods of time in connection with certain litigation, it was arranged that Peterson would replace him on the committee and would receive the same amount of money.

The plaintiff testified that his agreement allowed Peterson to retain the proceeds of the check for the year 1941 but that they were to share equally in the total of all checks, with Peterson paying income tax on the whole amount and Svenson reimbursing him for the tax paid on the portion received by him. On the other hand, Peterson testified that it was not until he received the check for the year 1942 that Svenson informed him that they

182

were to share it in equal portions and pay taxes in the manner he described.

The check for the year 1942 was deposited in the parties' joint checking account in the First National Bank of Chicago, the checks for the years 1943 and 1944 were not deposited but Peterson testified, and Svenson denied, that they were negotiated and the proceeds shared equally, and the 1945 check was deposited in the joint account.

In November, 1945, Svenson and Peterson, together with Carl A. Palmgren and G. Adolph Markuson, executed a land trust agreement with the defendant, American National Bank and Trust Co., in which it was stipulated that the beneficial interests of the parties in the trust were:

| | |
|---|---|
| Ernest J. Svenson | 55% |
| Gust J. Peterson | 15% |
| G. Adolph Markuson | 15% |
| Carl A. Palmgren | 15% |

Among other things, the trust agreement provided that:

"No assignment or other instrument conveying the interest of any beneficiary hereunder shall be binding on the Trustee in any manner until the original or an executed duplicate copy of such assignment or other instrument is deposited with the Trustee."

During the period the joint checking account existed, Peterson wrote the following checks:

| | |
|---|---|
| January 1944 to Peterson | $1,800.00 |
| March 1945 to Peterson | 200.00 |
| March 1946 to Svenson | 2,000.00 |
| March 1946 to Palmgren | 1,531.81 |
| March 1946 to Peterson | 468.19 |
| | $6,000.00 |

183

Although Svenson testified that he directed Peterson in March of 1946 to write the check to Palmgren for the purchase by Svenson of Palmgren's interest in the trust, no assignment of Palmgren's interest apparently was requested at that time. On May 14, 1947, American wrote to Svenson saying that it had learned that Svenson had purchased the interests of Markuson and Palmgren and requested that the necessary assignments be filed with it.

As a result, on May 17, 1947, Svenson sent an assignment form to Markuson, which was executed and returned bearing the date of May 15, 1947, but acknowledged of June 6, 1947. Palmgren testified that on December 8, 1949, he was summoned to the office of American and, at the request of its president, executed what later proved to be an assignment of his interest to Svenson. Finally, on March 18, 1954, an assignment of Palmgren's interest to Peterson, dated June 6, 1947, was delivered to American, bearing the notarial seal of one of its officers.

As might be expected, each of the parties says that Palmgren's interest was purchased in his behalf using his funds. In addition, Svenson maintains, because the assignment to him was filed earlier in time, that American should have executed its deed conveying an 85% interest in the trust res to him, while Peterson urges that because his assignment was dated earlier and executed in the presence of one of American's officers, it was in compliance with the trust agreement.

It seems that the parties only agree about the obviously true and dispute almost every other material factual issue. A rare instance of agreement between the parties occurs when Peterson agrees with the statement of the plaintiff that, "the most that can be said of the evidence in this case on this subject (who paid the valuable consideration for the assignment) is that it is wholly inconclusive."

184

■ We approach the consideration of this case having in mind that the evidence was heard in open court by the chancellor, who made findings of fact on hotly disputed questions, which we are unable to disturb unless they are clearly and palpably contrary to the manifest weight of the evidence. Funderburg v. Shappert, 23 Ill2d 220, 222, 177 NE2d 845 (1961); Loeb v. Gendel, 42 Ill App2d 111, 115–116, 191 NE2d 642 (1963); ILP, Appeal and Error, § 787. Accordingly, if the findings and decree of the chancellor find support in the evidence, we have no choice but to affirm his judgment.

The evidence of Peterson tended to show that by agreement he retained the 1941 check; the 1942 check was deposited in the joint account; the parties shared equally in the proceeds of the 1943 and 1944 checks; and the 1945 check was deposited in the joint account.

■■ Although Svenson testified that his portion of the 1941 check was to be repaid to him, but was not, although he denied sharing in the proceeds of the 1943 and 1944 checks, although he received only $2,000 of the $6,000 deposited in the joint account, all of which would have been considerably less than his share, the only evidence the record contains showing any effort on his part to receive his share is the statement, "I tried on three occasions to settle our money matters with him." And of equal importance is the fact that Svenson's complaint merely sought the conveyance of an eighty-five percent interest to him and did not seek a judgment for his share of the funds. The chancellor undoubtedly regarded this conduct of the parties as harmonious with their agreement and entered the decree in question. It is always allowable to look to the interpretation the parties themselves place on their agreement and by which they abide. Mitchell v. Illinois Cent. R. Co., 384 Ill 258, 51 NE2d 271 (1943); Anchor Grain Co. v. Kail, 54 Ill App 2d 130, 134, 203 NE2d 721 (1964). Language in con-

185

tracts is construed according to its actual meaning, and if there has been any action under an ambiguous contract the construction placed upon the same by the parties is of great aid in determining what was intended. Walter v. Sohio Petroleum Co., 402 Ill 33, 41, 83 NE2d 346 (1949).

The equities present in this case arise out of the foregoing factual setting. The assignment to Peterson occurred prior to that to Svenson and, although delay occurred in its formal filing with American, as a practical affair, American had notice of it and Peterson's delay is, in our opinion, more equatable with ignorance of his rights in that connection than with any fraudulent intent on his part. It seems clear that he had far more to lose than to gain when he was dilatory in filing it with American.

Although the parties briefed and argued other issues in this cause, they seemed to agree tacitly that the determination of whose funds were used to pay for the assignment would be decisive and, for that reason, we will not prolong this opinion by touching upon what are now subordinate issues.

Under the circumstances, we find that the decree of the chancellor is supported by the evidence, is not clearly contrary to the manifest weight of the evidence, and is affirmed.

Decree affirmed.

ABRAHAMSON, J., concurs.

DAVIS, P. J., dissents.

DAVIS, P. J., dissenting:
The opinion of the court is based upon the rule of law that a reviewing court will not disturb the findings of the chancellor, where he has seen and heard the witness and

186

the testimony is contradictory, unless such findings are clearly and palpably erroneous or manifestly against the weight of the evidence. It states: "Accordingly, if the findings and decree find support in the evidence, we have no choice but to affirm his judgment."

With due deference to the above rule of law, I would reverse. It is my opinion that the court unduly emphasized this rule and failed to consider a corollary rule which existed under the common law and by statute since 1837; namely, that courts exercising appellate jurisdiction have authority to set aside verdicts and judgments on the ground that the findings of fact are not supported by the manifest weight of the evidence. Corcoran v. City of Chicago, 373 Ill 567, 579, 27 NE2d 451 (1940); Ill Rev Stats 1965, c 110, par 92(3)(b).

I believe that it was the obligation of this court to consider the evidence in the record, and if it did not sustain the decree, or if the decree was manifestly against the weight of the evidence, then it was the duty of this court to reverse. Under the facts of this case as revealed by the record, I believe an opposite conclusion to be clearly apparent and, consequently, I would reverse.