WILLIAM C. NAGLE, Plaintiff-Appellee, *v.* GENERAL MERCHANDISING CORPORATION, Defendant-Appellant.

Third District    No. 77-403

Opinion filed April 10, 1978.

Roger V. Pierson and Matthew A. Maloney, both of Pierson & Maloney, of Princeton, for appellant.

Fred W. Potter, of Potter and Comba, of Princeton, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant General Merchandising Corporation, appeals from a judgment of the Circuit Court of Bureau County in a bench trial, in favor of plaintiff William C. Nagle, in an action based on the provisions of a written contract between the parties. The case was tried by the court without a jury and evidence was presented only on behalf of the plaintiff. At the close of plaintiff's evidence, defendant filed a motion for a finding and judgment in favor of defendant, presented no evidence, and elected to stand on its motion.

On appeal in this court, defendant contends that plaintiff did not comply with the terms of the contract between the parties and, also, that the court erred in rejecting the motion of defendant at the close of plaintiff's evidence as a matter of law and on the basis of the record, and, also, that the finding of the trial court and the award of judgment was contrary to the manifest weight of the evidence in the case.

The action in the instant case was based upon a written contract prepared by defendant-distributor of electronic game machines, involving the sale of certain machines to plaintiff. In such contract, defendant guaranteed the return of plaintiff's investment in such machines, if plaintiff did not receive a profit equal to the amount of his investment within five months of the date of the placement of the machines in the locations specified. Defendant warranted that it would secure the locations.

The guarantee to return plaintiff's investment was also conditioned on the submission by plaintiff to defendant of monthly reports on each location and that the equipment was on location and in good working order at all times. It was stipulated by the defendant that the monthly reports were made.

Defendant did not supply plaintiff with machines as ordered and specified in the contract and some of the machines which were supplied were not in good working order. The machines which were supplied were on locations and in good working order at all times during the five-month guarantee period from January 20 to June 21 of 1976, excluding the time when they were under repair by defendant. After defendant finally

got the defective machines repaired, there were then 10 machines in 10 different locations in good working order.

Some of the machines which were supplied by defendant were defective when delivered from the manufacturer. Defendant assumed the obligation to repair the machines and defendant sent the machines to the factory and defendant paid for such factory repair bills. Although defendant implies otherwise, it appears from the record that defendant did not expect or require or indicate in any way that plaintiff should rely on any manufacturer's warranty in the case. It is noted by the plaintiff, that the trial court actually stated to defense counsel (at a time when defendant was identifying a warranty limited to one year on the P. C. Board only on these machines), "All of the evidence, including the matters brought out in cross-examination of this witness [plaintiff] proved beyond any question that the defendant assumed the obligation of keeping them, of repairing these games."

The contract specifically provided that the defendant "warrants that it will secure locations for the buyer [plaintiff] for placing of the vending equipment." The defendant (not the plaintiff) made the contracts for the placement of these machines on location. The sales contract between defendant and plaintiff provided that plaintiff was not to pay more than 20% of the gross receipts of the machines as commissions. Defendant, however, after the sales contract was signed, presented the plaintiff with the location contracts which defendant had made which provided for a 50% commission. Defendant, both before and after the signing of the sales contract, which was prepared by defendant, advised the plaintiff that the going commission was then 50% and not 20% as originally represented. This was the interpretation that both parties accepted on this particular provision and both parties at all times acted on the basis of performance involving a 50% commission.

Defendant had contracted to deliver to plaintiff six electro-dart games and five electro-baseball games (one free) for $10,388, which plaintiff paid in advance. Defendant never supplied plaintiff with the five electro-baseball games contracted and paid for, although defendant had told plaintiff that plaintiff should not leave one game on location for more than 60 days and should rotate the dart games and baseball games. As we have noted also, a number of the machines which were supplied were not in good working order and were repaired by defendant.

■■ As we have noted, the manufacturer's warranty on the machines, addressed to and delivered to the defendant, and then delivered by defendant to plaintiff, was limited to one year on the P. C. Board only. There was no evidence that there was anything wrong with the P. C. Board on these machines. The defendant at no time apparently expected or advised plaintiff that plaintiff was under any obligation to look to the

warranty of the manufacturer or to send the machines back and look to the manufacturer for repair of the machines. As a matter of fact, defendant, beginning with the delivery and installation of the machines, assumed the obligation of, and attempted to repair the machines but thereafter sent the machines back to the manufacturer for repair and defendant paid the manufacturer's repair bill. The conduct of defendant is inconsistent with its contention now made, and its theory that the manufacturer's warranty constitutes a defense in this cause. Such contention is not consistent with the evidence. When defendant first repaired and then paid for the subsequent repair of the machines by the manufacturer, it indicated the construction placed on the contract by the defendant is inconsistent with any claim now made on appeal, that plaintiff was obligated as a matter of law to look to the manufacturer's warranty. *Weger v. Robinson Nash Motor Co.* (1930), 340 Ill. 81, 172 N.E. 7; *Occidental Chemical Co. v. Agri Profit Systems, Inc.* (2d Dist. 1976), 37 Ill. App. 3d 599, 346 N.E.2d 482.

A contract may be modified as to one or more of its provisions without affecting the liability of the parties under the other terms. (*Chicago Great Western R.R. Co. v. American McKenna Process Co.* (1916), 200 Ill. App. 166.) We are, therefore, concerned with an action brought on the contract as modified by the specific understanding and conduct of the parties.

With respect to the location of the machines sold by defendant to plaintiff, defendant itself warranted that it would secure the locations for these machines. The specific language was that defendant "warrants that it will secure locations for the buyer [plaintiff] for placing of the vending equipment." The record discloses that defendant, following the execution of the contract by plaintiff, contracted for the locations and established the commissions to be paid at these locations at a rate of 50%. It is, therefore, difficult for us to understand the contention made by defendant on appeal that the court should disregard this conduct, by which defendant induced plaintiff to agree to the 50% commissions. Defendant advised plaintiff that the commissions paid to the locations was 50%, and not 20%, and both defendant and plaintiff performed under the terms of their agreement on that basis.

■■ The monthly reports of plaintiff to defendant also showed the 50% commission which was paid and there was no evidence that defendant ever made any objection or protest of the 50% commission paid at the locations. It is clear that the defendant had placed its own interpretation on, and acted on, and acquiesced, in such payments. Defendant, therefore, could not, in this cause, disregard its own acts and conduct. (*Svenson v. American National Bank & Trust Co.* (2d Dist. 1967), 87 Ill. App. 2d 181, 231 N.E.2d 103.) As we have noted, also, defendant, in changing the contract to 50% commissions and having acted and accepted

such performance on the contract as so changed, is estopped to now assert, in this cause, that plaintiff should have performed under the 20% basis (*Robar v. Isham* (1924), 310 Ill. 585, 142 N.E. 460).

Since the record shows that defendant undertook repair of the machines and did not seek to rely on any obligation by plaintiff to invoke the manufacturer's limited warranty on the machines, and had actually sent the machines to the manufacturer and paid the manufacturer's repair bill, we find no basis for the defense asserted with respect to the existence of the manufacturer's warranty.

As shown by the record, defendant General Merchandising Corporation induced plaintiff Nagle to enter into the agreement with respect to the operation of the machines on the basic representation and guarantee that defendant would return plaintiff's investment if plaintiff did not receive a profit equal to his investment within five months of placement of the machines on locations warranted and secured by defendant. As we have noted, the basic defenses asserted by the defendant are not sustained by the record. Also, as stated in *Robar v. Isham* (1924), 310 Ill. 585, 589, 142 N.E. 460:

> "It is a well settled principle of law that where parties to a written contract mutually consent and acquiesce in the oral modifications and in the non-performance of certain provisions thereof and later comply with the other terms of the contract, each party is estopped to deny the efficacy of the modifying agreement and cannot set up such non-compliance of provisions thus waived in order to defeat specific performance, provided the proof is strong that such waiver or modifications have been assented to."

In the instant case, the proof was clearly made by plaintiff with respect to the issues raised on appeal in this case. It would be a strange and inequitable result indeed, if defendant, by its conduct, was to be rewarded by being excused from performance on the guarantee specified in the contract.

By defendant's contract, it guaranteed a return of the full investment if plaintiff did not receive a profit equal to his investment within five months of placement of the machines on location. Plaintiff submitted monthly reports as required by the agreement and the equipment was on location and in good working order at all times (excluding only the time when they were under repair by defendant) in accordance with the contract provisions.

■■■ It is also clear from the evidence that plaintiff did not make a profit equal to his investment within the five-month period of the placement of the machines on locations warranted and secured and contracted for by defendant. Plaintiff, therefore, was justified in demanding the return of his investment. The trial court obviously made a

finding and determination, which is supported by the evidence and which is not against the manifest weight thereof. The judgment of the trial court in the sum of $7,105.09 appropriately calculated plaintiff's damages based on the cost of the machines less the net profits which were earned on the machines with respect to which the payment demand was made. Such judgment was proper and should be affirmed.

For the reasons stated, therefore, the judgment of the Circuit Court of Bureau County is affirmed.

Affirmed.

BARRY, P. J., and STENGEL, J., concur.