NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 240863-U

NO. 4-24-0863

IN THE APPELLATE COURT

FILED
April 21, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| TMQ PROPERTIES, LLC, an Illinois Limited Liability Company, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) | Peoria County |
| v. | ) | No. 23LM260 |
| FAMILY DOLLAR, INC., a North Carolina Corporation, | ) ) | |
| Defendant-Appellant. | ) | Honorable |
| | ) | Stewart James Umholtz, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Zenoff and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court reversed the trial court's grant of summary judgment in favor of plaintiff in an action alleging defendant's breach of a lease agreement, concluding (1) defendant was not required to reimburse plaintiff for a stormwater utility charge because defendant was only obligated to reimburse real estate taxes and (2) the parties did not waive or modify plaintiff's obligation to submit reimbursement requests to defendant within certain 180-day periods, which was a condition precedent to defendant's obligation to pay the expenses identified.

¶ 2    Defendant, Family Dollar, Inc., a North Carolina corporation (Family Dollar), leases property from plaintiff, TMQ Properties, LLC, an Illinois limited liability company (TMQ). After Family Dollar refused to reimburse TMQ for payments TMQ made on the property for insurance premiums, real estate taxes, and a stormwater utility charge imposed by the City of Peoria, TMQ filed a single-count complaint, alleging Family Dollar breached the terms of their lease agreement (Lease). The parties filed cross-motions for summary judgment. Family Dollar argued (1) it was not required to reimburse TMQ because TMQ failed to timely submit invoices

for the charges to Family Dollar, as required by the Lease, and (2) the Lease required Family Dollar to reimburse only real estate taxes. TMQ argued (1) the parties modified the Lease where Family Dollar previously reimbursed TMQ for charges contained in untimely invoices and (2) Family Dollar's obligation to reimburse TMQ for real estate taxes encompassed the stormwater utility charge. The trial court denied Family Dollar's motion and granted summary judgment in favor of TMQ. The court concluded (1) the parties modified the Lease through their conduct, such that Family Dollar was required to reimburse TMQ for charges, even where TMQ submitted untimely invoices, and (2) Family Dollar was required to reimburse TMQ for the stormwater utility charge. Family Dollar appeals, arguing that the court erred in granting summary judgment to TMQ, as no modification of the Lease terms occurred, and the Lease did not require Family Dollar to reimburse TMQ for the stormwater utility charge. We reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4            The following facts are taken from the record. TMQ owned a shopping center located in Peoria. On March 18, 2015, TMQ and Family Dollar entered into the Lease, which provided in the introductory paragraph that Family Dollar would lease "that space [in the shopping center] including the roof and exterior walls that contains approximately 9,100 (70' x 130') interior square feet (the 'Demised Premises')." The Lease also contained the following provisions relevant to this appeal. Paragraph 11 required (1) TMQ to maintain a commercial property insurance policy over the Demised Premises and (2) Family Dollar to reimburse TMQ for Family Dollar's "proportionate share of the insurance premium for the insurance [TMQ] is required to carry." Each year, TMQ was required to provide Family Dollar with a statement indicating the amount owed. However, Family Dollar would not be obligated to reimburse the premium if TMQ failed to provide the statement within a specified period. Specifically, Paragraph 11 states:

"In no event will [Family Dollar] be responsible for reimbursing [TMQ] for any insurance premium unless [Family Dollar] has received the required statement and documentation from [TMQ] within 180 days after the earlier of the date [TMQ] paid the premium or the date the premium was due and payable."

¶ 5    In Paragraph 13, the Lease imposed similar obligations upon the parties regarding certain taxes:

"13. TAXES. [TMQ] will timely pay all taxes, assessments and other charges that may be levied, assessed or charged against the Shopping Center, including the Demised Premises, and [TMQ] will make all payments required to be made under the terms of any mortgage or deed of trust that is now or later becomes a lien on the Shopping Center or the Demised Premises.

*** Beginning on the Rent Commencement Date, [Family Dollar] will reimburse [TMQ] for [Family Dollar]'s proportionate share of the real estate taxes on the Shopping Center. ***

[TMQ] will provide [Family Dollar] with a copy of the tax bill with evidence of [TMQ]'s payment for each year beginning with the year in which the lease term commences and an up-to-date schedule or plan of all spaces in the Shopping Center whether occupied or unoccupied and any other information [Family Dollar] may reasonably require. In no event will [Family Dollar] be responsible for reimbursing [TMQ] for any real estate taxes unless [Family Dollar] has received written request for reimbursement from [TMQ] along with the required documentation within 180 days after the last day the taxes were due without penalty or interest."

¶ 6          Other relevant paragraphs in the Lease pertained to the interpretation and construction of the agreement. Specifically, Paragraph 19 states, in part:

> "The term 'lease year' is a 52 week period ending on June 30. 'Gross sales' means all sales made by [Family Dollar] from the Demised Premises excluding sales tax, excise tax, refunds, void sales, and sales and revenues from vending machines and other mechanical devices including ATMs."

Paragraph 29 reads:

> "29. <u>PARAGRAPH HEADINGS; ETC</u>. The numbered sections of this Lease are referred to as Paragraphs, and the phrase 'this Paragraph' means the entire numbered Paragraph and not just a grammatical paragraph contained within a numbered Paragraph. The Paragraph headings throughout this Lease are for convenience and reference only, and will in no way be held to explain, modify, amplify, or aid in the interpretation, construction or meaning of the provisions of this Lease."

Paragraph 32 states:

> "32. <u>NON-WAIVER</u>. No waiver of any agreement, condition or covenant will be valid unless it is set forth in writing signed by the party to be bound by the waiver. No waiver of a breach of any agreement, condition or covenant will be claimed or pleaded to excuse a subsequent breach of the same agreement, condition or covenant or any other agreement, condition or covenant."

Finally, Paragraph 40 provides:

> "40. <u>ENTIRE AGREEMENT; BINDING ON SUCCESSORS</u>. This Lease constitutes the entire agreement between [TMQ] and [Family Dollar] and all

understandings and agreements between [TMQ] and [Family Dollar] are merged into this Lease. This Lease may not be modified, amended or supplemented except by an agreement in writing signed by [TMQ] and [Family Dollar]."

¶ 7 Beginning on June 24, 2016, and continuing each following year on June 30, 2017; June 30, 2018; June 30, 2019; July 13, 2020; June 30, 2021; July 11, 2022; and July 3, 2023, TMQ sent Family Dollar documentation indicating the reimbursement amounts owed for real estate taxes imposed by Peoria County, insurance fees, and common area maintenance expenses for the corresponding lease years. Each billing from June 30, 2019, onward included a stormwater utility charge, which was imposed upon TMQ's property after the City of Peoria adopted an ordinance that charged a service fee upon users of the city's stormwater system. See Peoria Ordinance No. 17523 (eff. Dec. 5, 2017). The parties did not dispute that each billing TMQ sent was beyond the Lease's 180-day periods within which to submit insurance and real estate tax reimbursement requests to Family Dollar. The parties also conceded Family Dollar reimbursed TMQ for all charges in each of the invoices except the July 3, 2023, invoice. Upon receipt of the July 3, 2023, invoice, Family Dollar paid those charges it did not dispute but refused to pay the insurance premiums and stormwater utility charge on the bases (1) they were not submitted within the 180-day periods required by the Lease and (2) the stormwater utility charge was not reimbursable under the Lease. Accordingly, an unpaid balance of $9,462.74 remained outstanding.

¶ 8 On July 24, 2023, TMQ sent Family Dollar a notice of default; however, Family Dollar refused to pay the remaining amount.

¶ 9 On August 24, 2023, TMQ filed a complaint, alleging Family Dollar breached its obligation to reimburse TMQ for the amounts owed to it and requesting the recovery of the unpaid sum plus attorney fees and expenses. On December 20, 2023, Family Dollar filed an answer and

counterclaim, seeking a declaration it was not obligated to reimburse TMQ and requesting attorney fees.

¶ 10 On January 9, 2024, TMQ filed a motion for summary judgment, alleging, although it did not timely submit the July 3, 2023, invoice, Family Dollar's obligation to pay the outstanding charges remained because the Lease terms were "modified" by the parties' conduct, *i.e.*, Family Dollar had paid past untimely invoices without complaint. TMQ further argued Family Dollar was obligated to pay the stormwater utility charge because it met the "definition of Taxes as provided in the Lease," namely, that it was an " 'assessment[ ] [or] other charge[ ]' " levied against TMQ's property.

¶ 11 On March 4, 2024, Family Dollar filed its response and cross-motion for summary judgment, alleging it was not required to pay the outstanding charges because, under the Lease terms, TMQ failed to timely request a reimbursement and no modification of the Lease could occur absent a writing signed by Family Dollar agreeing to the modification. Family Dollar further argued the stormwater utility charge was not a real estate tax, and because the applicable provision of the Lease required it to reimburse only real estate taxes, it had no obligation to reimburse TMQ for that charge.

¶ 12 On March 27, 2024, the trial court held a hearing on the parties' cross-motions for summary judgment. The parties reasserted the arguments in their written motions, and Family Dollar further argued any purported modification of the Lease lacked consideration. Following the hearing, the court entered an order granting summary judgment in favor of TMQ and denying Family Dollar's motion. The court concluded that Family Dollar was obligated to reimburse TMQ for the insurance charge because, although the invoice was not sent within the 180-day periods provided by the Lease, "the conduct of the parties modifie[d] any 180 day deadline to bill [Family

Dollar]." The court further concluded that, whether the stormwater utility charge was a "fee or a tax or an expense," the "conduct of the parties after the execution of the agreement" "shows an intention" to modify the Lease such that "this expense would be reimbursed by [Family Dollar] regardless of any 180 day requirement." The court determined there was consideration for the modification because the "parties benefit from having a streamlined business model" where "everything is billed out at the same time." In particular, the court noted that the "inherent efficiencies in such a system" were a "win/win for both parties," and it believed Family Dollar benefited from the delayed submission of invoices because it was "not obligated to make that payment until [it] is billed." On May 15, 2024, the court awarded TMQ $33,165.52 in attorney fees and costs.

¶ 13     This appeal followed.

¶ 14                              II. ANALYSIS

¶ 15     On appeal, Family Dollar argues the trial court erred in denying its motion for summary judgment and granting summary judgment in favor of TMQ. It contends the stormwater utility charge was not a "real estate tax" for which it was responsible to reimburse TMQ under the Lease. Family Dollar further argues it was not responsible for the outstanding charges because TMQ failed to submit the reimbursement requests within the 180-day periods mandated by the Lease and that requirement could not be modified by the parties' conduct. Finally, Family Dollar asserts, even assuming the Lease could be modified by conduct, there was no consideration for any modification here.

¶ 16     "When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. Summary judgment should be granted where the "pleadings,

- 7 -

depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). We review the entry of summary judgment in favor of a party *de novo*. *Pielet*, 2012 IL 112064, ¶ 30.

¶ 17     The aim of contractual interpretation is to give effect to the parties' intent. *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). Under the "four corners rule," when an agreement is reduced to writing, we must presume the writing speaks the intention of the parties who signed it, and we discern the parties' intention from the language used, without resorting to extrinsic evidence of intention. *Gillespie Community Unit School District No. 7, Macoupin County, Illinois v. Union Pacific R.R. Co.*, 2015 IL App (4th) 140877, ¶ 88. Thus, we initially look to the language of the contract alone, and if the contract is facially unambiguous, we interpret the contract as a matter of law. *Id.* ¶ 89. By contrast, if the contractual language is susceptible to multiple meanings, a court may consider parol evidence as an aid for resolving the ambiguity. *Id.* When the contract language is unambiguous, we interpret that language using its plain and ordinary meaning. *Virginia Surety Co.*, 224 Ill. 2d at 556. In doing so, we are mindful that a contract is to be construed as a whole, viewing each part in light of the others, and we are not to ascertain the parties' intent from a single clause or provision standing alone. *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007).

¶ 18     "If certain provisions 'easily could have been included in the contract but were not,' there is a 'strong presumption' that the omitted provisions were not part of the deal." *Dustman v. Advocate Aurora Health, Inc.*, 2021 IL App (4th) 210157, ¶ 54 (quoting *Illinois Insurance Guaranty Fund v. Nwidor*, 2018 IL App (1st) 171378, ¶ 34). Accordingly, we will not add terms or conditions to the contract that were not agreed to by the parties. *Id.*; see *Village of Kirkland v.*

*Kirkland Properties Holdings Co.*, 2022 IL App (2d) 200780, ¶ 28 ("The court will not read into the document a provision it does not contain."). Nor will we interpret a contract in a manner that would nullify a provision, render a provision meaningless, or otherwise lead to an understanding that is contrary to the plain meaning of the language used. *Thompson v. Gordon*, 241 Ill. 2d 428, 442 (2011).

¶ 19                                  A. Stormwater Utility Charge

¶ 20          Here, Family Dollar first argues the stormwater utility charge was not reimbursable to TMQ because the relevant provision of the Lease required Family Dollar to reimburse only real estate taxes, which the stormwater utility charge was not. TMQ responds that, per Paragraph 13, "taxes" is a defined term that not only means "all taxes," but also all "assessments and other charges that may be levied, assessed or charged against the Shopping Center, including the Demised Premises." TMQ therefore contends that, because the stormwater utility charge was an assessment or other charge levied against the shopping center, Family Dollar's obligation to reimburse TMQ for its "proportionate share of the real estate taxes on the Shopping Center" necessarily includes that charge.

¶ 21          TMQ relies upon *American Xyrofin, Inc. v. Allis-Chalmers Corp.*, 230 Ill. App. 3d 662 (1992), to argue the Lease used the "common" practice of defining a term for shorthand use later in a contract. As is relevant here, in *American Xyrofin*, the appellate court considered the scope of a successor liability provision of an asset purchase agreement between a manufacturer and its successor after the plaintiffs sued both entities for providing negligent instructions regarding how to operate a compressor, causing it to fail and suffer damage. *Id.* at 665-66, 673. The provision at issue provided as follows:

        " '9. *Assumption of Liabilities and Obligations*

(a) *Generally*. Except as otherwise provided herein, [the successor] hereby assumes and agrees to pay, perform or discharge all liabilities and obligations resulting from the operations of CD on, before or after the date hereof. For a period of two years from the date hereof [6/24/85], [the successor] agrees to remain responsible for, and to indemnify [the manufacturer] from and hold [the manufacturer] harmless against, the amount of all liabilities and obligations resulting from the operations of CD on or before the date hereof that are not reflected on the closing Balance Sheet; provided, that [the successor] hereby assumes and agrees to pay, perform or discharge any and all liability as to claims made after the date hereof relating to property damage, including damage to the product itself, or personal injury or death caused in whole or in part by a product manufactured or sold by CD or its predecessors (Product Liability Claims). With respect to Product Liability claims made on or prior to the date hereof, [the manufacturer] shall remain liable for such claims.' " *Id.* at 673-74.

The successor argued, because the asset purchase agreement held it liable only for "product liability" claims, and not for claims arising out of the manufacturer's operations, it could not be deemed responsible for the plaintiffs' claims, which pertained to negligent advice and not products liability. *Id.* at 674. The court rejected the successor's argument, concluding the agreement "allocated the responsibility for any liabilities resulting from a successful claim by plaintiffs" to the successor. *Id.* The court reasoned "product liability claims" was a defined term, as the "language preceding the parenthetical phrase 'Products Liability Clams' clearly defined what the parties intended the phrase to mean." *Id.* The court explained it is "commonplace in contracts for parties to define a duty or scope of obligation in detail and then to shorthand that definition by use

of a descriptive term or phrase." *Id.* In accordance with that practice, the agreement established the successor's obligations by defining "products liability claims" as claims made after the date of the agreement " '*relating* to property damage, including damage to the product itself.' " (Emphasis in original.) *Id.* at 675. Because the plaintiffs alleged the defendant's negligent advice caused the compressor to fail and suffer damage, the claim was related to property damage and, therefore, encompassed by the defined term "products liability claims," such that the responsibility for any loss was allocated to the successor. *Id.*

¶ 22 TMQ's reliance upon *American Xyrofin* is misplaced. Contrary to TMQ's argument, the Lease does not define the term "taxes." Unlike *American Xyrofin*, no parenthetical is included to signal the parties' purported intention that "taxes" was to be understood as a shorthand for "taxes, assessments and other charges that may be levied, assessed or charged against the Shopping Center." The lack of such an intention is particularly evident, considering that elsewhere in the Lease, parentheticals *were* included to signal the use of other defined terms. For example, in the introductory paragraph, the language immediately preceding the parenthetical "(the 'Demised Premises')" indicated the parties intended that term to mean the space in the shopping center "including the roof and exterior walls that contains approximately 9,100 (70' x 130') interior square feet." Additionally, while the Lease defined some terms without the use of parentheticals, those instances were accompanied by language clearly expressing the parties' intent that they were to have specific meanings. For example, the Lease explicitly provided that "[t]he term 'lease year' is a 52 week period ending on June 30" and that " '[g]ross sales' mean[t] all sales made by [Family Dollar] from the Demised Premises excluding sales tax, excise tax, refunds, void sales, and sales and revenues from vending machines and other mechanical devices including ATMs." No such language indicated that "taxes" had a particularized meaning in the Lease. TMQ

- 11 -

nevertheless contends the parties intended "taxes" to be understood to encompass "assessments and other charges" because that language appeared in Paragraph 13, which was set off by the heading "Taxes." However, TMQ overlooks that Paragraph 29 explicitly stated that such headings were included for convenience and reference only and were not meant to explain or aid in the interpretation, construction, or meaning of the Lease. To assign a particular meaning to the word "taxes" on the basis that the section in which that word appears was set off by the heading "Taxes" would nullify Paragraph 29, which we will not do. See *Thompson*, 241 Ill. 2d at 442.

¶ 23　　　　Given the foregoing, we conclude the language of the Lease does not support TMQ's contention that "taxes" was intended by the parties to encompass "assessments and other charges that may be levied, assessed or charged against the Shopping Center." Accordingly, we reject TMQ's argument Family Dollar was required to pay the stormwater utility charge, because Paragraph 13 of the Lease only required Family Dollar to reimburse TMQ for a "proportionate share of the real estate *taxes* on the Shopping Center," and not also for "assessments and other charges." (Emphasis added.) See *Dustman*, 2021 IL App (4th) 210157, ¶ 54; see also *Church of Peace v. City of Rock Island*, 357 Ill. App. 3d 471, 476 (2005) (concluding the stormwater assessment imposed by the City of Rock Island was a fee, not a tax).

¶ 24　　　　　　　　　　B. 180-Day Reimbursement Provision

¶ 25　　　　Family Dollar also argues it was not required to pay TMQ for any insurance premiums or real estate taxes in the July 3, 2023, reimbursement statement because the invoice was not submitted to Family Dollar within the time frames specified in the Lease. Specifically, Family Dollar contends, because no reimbursement request for the insurance premiums was submitted within 180 days after the earlier of the date TMQ paid the premium or the date the premium was due and payable, it had no responsibility for reimbursing that expense under

Paragraph 11. Similarly, because no reimbursement request for real estate taxes was submitted within 180 days of the last day the taxes were due without penalty or interest, Family Dollar claims it had no responsibility to reimburse those expenses under Paragraph 13. Notably, TMQ does not contest the reimbursement requests were submitted after the relevant 180-day periods. Instead, it asserts the parties' conduct modified the Lease terms where, prior to the July 3, 2023, invoice, TMQ routinely billed Family Dollar for all reimbursement expenses after the relevant 180-day periods, and Family Dollar paid the expenses as billed without objection. Family Dollar counters that no modification of the parties' responsibilities occurred since there was no written, signed agreement committing to the purported modification.

¶ 26      TMQ appropriately observes Illinois courts have recognized parties to a contract may waive certain provisions through conduct suggesting strict compliance with those provisions is not required. *Wolfram Partnership, Ltd. v. LaSalle National Bank*, 328 Ill. App. 3d 207, 223 (2001). This rule prevents one party to a contract from leading the other to believe strict compliance with an obligation will not be required, only to then sue the other party for noncompliance with that obligation. *Id.* at 223-24. TMQ also correctly notes Illinois courts have recognized, when parties to a written contract agree to oral modifications or to the nonperformance of certain provisions, the parties are estopped from contesting the efficacy of the modification or from arguing the other party's nonperformance defeats specific performance. *Nagle v. General Merchandising Corp.*, 58 Ill. App. 3d 344, 348 (1978). However, the authorities TMQ cites are inapposite here, as none of them involved nonwaiver and modification provisions similar to those present in this case.

¶ 27      Here, Paragraph 32 provided, "No waiver of any agreement, condition or covenant will be valid unless it is set forth in writing signed by the party to be bound by the waiver." In

Paragraph 11, the parties agreed, as a condition of Family Dollar being responsible for reimbursing TMQ for insurance premiums, Family Dollar had to receive from TMQ a statement within 180 days of the date TMQ paid the premium or the date the premium was due, whichever was earlier. Moreover, Paragraph 13 explicitly stated Family Dollar would not be responsible for reimbursing TMQ for real estate taxes unless it received a written request for reimbursement "within 180 days after the last day the taxes were due without penalty or interest." Nothing in the record indicates Family Dollar signed any waiver relieving TMQ of its responsibility to submit reimbursement requests within the relevant 180-day periods before Family Dollar's obligation to pay could be triggered. Thus, although Family Dollar paid prior untimely reimbursement requests without complaint, in light of the nonwaiver clause that both parties agreed to, we cannot interpret Family Dollar's conduct to constitute a waiver of TMQ's obligation to submit timely reimbursement requests. See *General Grocer Co. of Illinois v. Bachar*, 51 Ill. App. 3d 907, 912 (1977) (stating the plaintiff's acceptance of the defendants' late payments was not a waiver of the defendants' responsibility to provide payment on a date certain because their agreement prohibited interpreting a party's failure to exercise a right to be a waiver of said right and any waiver had to be in writing); *Reed v. Getco, LLC*, 2016 IL App (1st) 151801, ¶¶ 21-23 (stating the defendant did not waive a noncompete provision of an agreement with the plaintiff where the agreement required a waiver or modification to be in writing to be effective and the plaintiff signed no such writing).

¶ 28 Nor do we accept TMQ's argument Family Dollar's conduct of paying untimely reimbursement requests amounted to a modification of the Lease. Paragraph 40 provided, *inter alia*, the "Lease may not be modified, amended or supplemented except by an agreement in writing." Both parties assented to this provision, and the record contains no writing indicating the parties' agreement to modify the Lease so as to obligate Family Dollar to pay real estate taxes and

insurance premiums submitted for reimbursement beyond the 180-day periods. Thus, although Family Dollar previously reimbursed real estate taxes and insurance premiums that were not timely submitted by TMQ, we conclude this conduct alone did not amount to a modification of the parties' obligations under the Lease. See *id.* ¶ 33 (stating no modification of the parties' agreement occurred where the agreement provided only a writing signed by the party against whom the modification was enforced could effectuate a modification of the agreement, and the plaintiff signed no such writing). Furthermore, to construe paragraph 32 otherwise would render the written requirement to effectuate a waiver a nullity or meaningless.

¶ 29        Accordingly, because TMQ did not submit to Family Dollar its July 3, 2023, reimbursement statement for real estate taxes and insurance premiums within the relevant 180-day periods, Family Dollar had no obligation under the Lease to pay those expenses. Because we conclude no modification of the Lease occurred in the absence of a written agreement between the parties, we need not address Family Dollar's additional argument there was no consideration for any such modification.

¶ 30                            III. CONCLUSION

¶ 31        For the reasons stated, we reverse the trial court's order granting summary judgment in favor of TMQ, denying Family Dollar's motion for summary judgment, and awarding attorney fees to TMQ's counsel; we remand with directions for the court to enter summary judgment for Family Dollar and to conduct further proceedings consistent with this decision.

¶ 32        Reversed; cause remanded with directions.