SHORR PAPER PRODUCTS, INC., Plaintiff-Appellant, v. AURORA ELE-VATOR, INC., Defendant-Appellee (Reliance Elevator Company, Defendant).

Second District   No. 2—89—1025

Opinion filed May 30, 1990.

Bruce A. Brown and Fred T. Myers, both of Goldsmith, Thelin, Schiller & Dickson, of Aurora, for appellant.

David P. Peskind, Steven N. Peskind, and James J. Pacione, all of Peskind & Peskind, Ltd., of Aurora, for appellee.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiff, Shorr Paper Products, Inc., filed a three-count complaint in the circuit court of Kane County seeking to recover for damages sustained by a freight elevator in its building. Counts I and II sought recovery from defendant Reliance Elevator Company (Reliance), the company which originally installed and maintained the elevator. Count III named as a defendant Aurora Elevator, Inc. (Aurora), the company which contracted to maintain the elevator after Reliance's maintenance contract had expired. The trial court granted Aurora's motion for summary judgment on count III, and, after the trial court entered a finding that there was no just reason to delay enforcement or appeal of its ruling, the plaintiff filed this appeal pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)).

At issue on appeal is whether the trial court correctly determined that the maintenance contract validly exculpated Aurora from any liability for the damages sustained by the plaintiff's elevator.

The elevator, which is the subject of this dispute, was installed in the plaintiff's building by Reliance in 1979. The elevator was to be of a class "C1" rating, meaning that it should have been able to lift a loaded forklift truck. After the elevator was installed, Reliance entered into an agreement with the plaintiff to maintain the elevator. When this maintenance agreement expired, the plaintiff entered into a new maintenance agreement (the agreement) with Aurora. The agreement, which is entitled "MAINTENANCE CONTRACT" with a subtitle reading "OIL/GREASE," was executed on November 11,

1984, and was to commence in December 1984.

The agreement provided that Aurora would service and maintain the plaintiff's elevator on a monthly basis. The agreement stated that the monthly service would "consist of a regular examination of the elevator apparatus." The agreement specified that such service would include:

"OILING AND CLEANING MACHINE, MOTOR AND CONTROLLER; GREASING OR OILING BEARINGS AND GUIDES; ALSO MAKING NECESSARY ADJUSTMENTS AT THE TIME OF EXAMINATION. AURORA ELEVATOR, INC. TO FURNISH OIL AND GREASE. ALSO TO INCLUDE 24 HOUR MINOR CALL-BACK SERVICE."

The agreement also contained the following provision:

"AURORA ELEVATOR, INC. shall not under any circumstances be liable under or by reason of this agreement directly or indirectly for any accident, injury, breakage or damage to the elevator(s) or any machinery, appliances or property connected therewith—nor shall it under any circumstances be liable under or by any reason of this agreement directly or indirectly for any accident, injury, or damage to any person or persons whomsoever while riding upon or being in or about said elevator(s) however caused—nor shall it in any way be liable for any damage caused directly or indirectly by strikes, lockouts, accidents, or other causes beyond its control."

Aurora admits that the agreement required it to perform its services thereunder in a "good, workmanlike manner."

On July 2, 1987, a forklift truck drove onto the elevator. The plaintiff alleges that, although the elevator should have been capable of bearing this load, the elevator failed and sustained damage. The plaintiff alleges that it incurred damages of $19,850 to repair the elevator; $700 to inspect the elevator; $2,800 to rent storage space while the elevator was out of commission; and $2,684 in carrying costs for duplicative inventory. The plaintiff sought a total of $26,092 in damages.

The plaintiff filed the instant action against Reliance on May 6, 1988, and subsequently filed an amended complaint on June 16, 1988. Aurora was not named as a defendant in the action until the filing of the plaintiff's second amended complaint on December 16, 1988. Count I of the amended complaint alleged that Reliance breached the contract for installation of the elevator, and count II alleged that Reliance breached its service contract. Count III alleged that Aurora breached the subsequent maintenance agreement. Specifically, count

III alleged that Aurora failed to: (1) inspect the elevator and its components in a good, workmanlike manner; (2) repair or replace the safeties on the elevator, which were of an improper size; (3) replace the gibs or shoes on the elevator when they became worn; (4) conduct maintenance tests or to conduct such tests in a workmanlike manner; (5) bring to the plaintiff's attention the need to correct any of the above problems; and (6) otherwise properly maintain the elevator and its components.

On May 19, 1989, Aurora filed a motion for summary judgment on count III of the plaintiff's complaint. Aurora argued that the agreement specifically provided that Aurora would not be liable for any accident, injury, breakage or damage to the elevator or its component parts. The plaintiff contended that the exculpatory provision in the agreement did not exempt Aurora from liability for damages caused by its breach of the agreement. Alternatively, the plaintiff contended that the exculpatory provision in the contract, if interpreted to bar the plaintiff's claim, should be declared void because it conflicts with public policy and with the statutory prohibition against indemnification for one's own negligence (Ill. Rev. Stat. 1987, ch. 29, par. 61). The trial court granted Aurora's motion for summary judgment on count III, and the court subsequently entered a finding pursuant to Supreme Court Rule 304(a) that there was no just reason to delay enforcement or appeal of its order.

On appeal, the plaintiff advances the same arguments it presented at trial in opposition to the motion for summary judgment and contends that summary judgment in favor of Aurora was improper. A trial court may grant summary judgment where the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) In ruling on a motion for summary judgment, the trial court must consider all of the evidence before it and construe it strictly against the movant and liberally in favor of the party against whom judgment is sought. Summary judgment is a drastic means of disposing of litigation and should be granted only when the right of the moving party is clear and free from doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) We note that, where, as here, the facts are not in dispute, the interpretation of a contract is a question of law which can be decided on a motion for summary judgment. (*Bohnen International, Inc. v. Liberty Mutual Insurance Co.* (1983), 120 Ill. App. 3d 657, 662.) However, as a question of law, the interpretation of the agreement can be made on re-

view independently of the trial court's judgment. *Bohnen,* 120 Ill. App. 3d at 662-63.

The plaintiff's first contention is that Aurora's broad interpretation of the agreement's exculpatory provision, which was apparently accepted by the trial court, effectively renders the agreement meaningless. The plaintiff argues that the exculpatory provision should not be read so broadly that it negates Aurora's duties under the agreement. Aurora, on the other hand, contends that the trial court's interpretation of the exculpatory provision does not negate Aurora's duties. Aurora argues that if it had *failed* to oil, grease or inspect the elevator, then it would have been liable to the plaintiff.

■ Our task here is to interpret the scope of the exculpatory provision in the context of the entire agreement. In interpreting a contract, it is presumed that all provisions were intended for a purpose, and conflicting provisions will be reconciled if possible so as to give effect to all of the contract's provisions. (*Bruno Benedetti & Sons, Inc. v. O'Malley* (1984), 124 Ill. App. 3d 500, 506.) We believe that Aurora's interpretation of the agreement is untenable because it focuses only on the exculpatory provision to the effective exclusion of Aurora's specifically articulated obligations under the agreement.

The agreement specifies what duties Aurora owed under the contract, including the inspection, oiling and greasing of the elevator. Aurora concedes that, if it had *failed* to perform any of its duties, it would be liable for a breach of the agreement. Merely failing to show up at the jobsite is not, however, the only manner in which Aurora could have breached the agreement. As we noted above, Aurora was obligated to perform its articulated duties in a good and workmanlike manner; failure to perform to this level of competence would also have constituted a breach (see *Eichberger v. Folliard* (1988), 169 Ill. App. 3d 145, 150). Thus, the plaintiff would be entitled to recover for the damages, if any, caused by such a breach. This would include structural damages to the extent they were caused by the breach.

■ We believe that the language of the exculpatory provision does not alter Aurora's basic performance obligations in this regard. The exculpatory provision merely indicates that Aurora is not a general guarantor of the elevator's reliability. Its service agreement, in other words, did not place the ultimate burden of maintaining the elevator, whatever the cause of a breakdown might be, on Aurora instead of the plaintiff. Aurora's obligation under the agreement was merely to perform the services specified, namely, to inspect, oil and grease the elevator. While the agreement insulates Aurora from general responsibility for structural damage to the elevator, we do not be-

lieve that the exculpatory clause protects Aurora from liability for any damages directly caused by its failure to perform its specified service obligations sufficiently.

We believe that this interpretation of the agreement is in accord with established rules of contract construction. We resort to the rules of construction in order to arrive at an interpretation of the agreement which gives meaning to all of its provisions. The interpretation accepted here gives meaning to both the exculpatory provision and the provision setting out Aurora's responsibilities under the agreement. (See *O'Malley*, 124 Ill. App. 3d at 506.) Furthermore, we have endeavored to prevent Aurora's duties under the agreement from becoming illusory and meaningless, a result which would be occasioned if Aurora were not liable for failing to perform its obligations sufficiently. (See *Contact Lenses Unlimited, Inc. v. Johnson* (1988), 176 Ill. App. 3d 875, 879-80.) Finally, we note that our interpretation is consistent with the notion that contractual language which is ambiguous or uncertain is to be construed against the party who drafted the contract. (*Berutti v. Dierks Foods, Inc.* (1986), 145 Ill. App. 3d 931, 934.) This consideration is particularly important when a party seeks to take advantage of a purported exception to an agreement. See *Parker v. Arthur Murray, Inc.* (1973), 10 Ill. App. 3d 1000, 1003.

We conclude, therefore, that the agreement does not protect Aurora from liability for damages caused by its breach thereof. This conclusion makes it unnecessary for us to address the other contentions raised and argued on appeal. *Unger v. Nunda Township Rural Fire Protection District* (1985), 135 Ill. App. 3d 758, 764.

The judgment of the circuit court of Kane County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

DUNN and INGLIS, JJ., concur.