**TRANS STATES AIRLINES (formerly Resort Air, Inc.), d/b/a Trans World Express, Plaintiff,**

**v.**

**PRATT & WHITNEY CANADA, INC., a subsidiary of United Technologies Corporation, a corporation, Defendant.**

No. 92 C 1658.

United States District Court,
N.D. Illinois, E.D.

Oct. 21, 1993.

---

Hugh Gerard McBreen, McBreen, McBreen & Kopko, Chicago, IL, for Trans States Airlines.

Michael H. West, Pope, Ballard, Shepard & Fowle, Ltd., Chicago, IL, for Pratt & Whitney Canada, Inc.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the Court on the defendant's motion for summary judgment as to Counts I and III. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

This case arose from the failure of an airline engine that necessitated an emergency landing and resulted in damage to the airplane and minor personal injury. Plaintiff Trans States Airlines ("Trans States") is a common carrier which provides airline service to the public. Trans States is incorporated in Missouri and has its principal place of business in St. Louis, Missouri. Defendant Pratt & Whitney Canada, Inc. ("Pratt & Whitney") manufactures gas turbine engines for commercial aircraft. It manufactured an engine that was assembled into the plane in question by Societe Nationale Industrielle Aerospatiale, Usine de Toulouse, Service de Compatablite ("Aerospatiale"). That plane was sold to McDonnell Douglas Finance Corporation by the manufacturer. McDonnell Douglas Finance leased the plane to GPA ATR, Inc., which in turn subleased it to Trans States.

On July 17, 1991, Trans States Flight 7128 experienced an overload failure of the left engine while approaching the Greater Peoria Airport. The engine failure resulted in an in-flight fire and necessitated an emergency landing. The engine was manufactured by Pratt & Whitney.

As a result of this incident, Trans States filed this lawsuit against Pratt & Whitney alleging negligence, breach of warranty, and strict liability. Pratt & Whitney now moves for summary judgment on Counts I and III on the grounds that economic losses are not recoverable under the tort theories of negligence and strict liability. While the motion is styled as one for summary judgment, it is more in the nature of a motion to strike or dismiss certain damages counts or a motion in limine concerning whether the claimed losses are economic losses. We now turn to the merits of the motion.

## DISCUSSION

The first issue raised by the parties is what law should be applied in deciding this motion. Our prior Memorandum Opinion established that Illinois law will be applied. Memorandum Opinion at 3 (Aug. 20, 1992). Following the law of the case doctrine, we will apply Illinois law to this motion as well.

Now we must determine whether Illinois law will allow Trans States to recover under the theories of negligence and strict liability. The United States Supreme Court in *East River S.S. Corp. v. TransAmerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), held that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." *Id.* at 871, 106 S.Ct. at 2302. However, tort recovery is available for per-

sonal injuries and injuries to other property caused by product malfunctions. *Id.* at 870, 106 S.Ct. at 2301. As personal injury was clearly alleged in the instant case, we are left with determining whether any damage to "other property" occurred here.

Pratt & Whitney asserts that this is merely a case of a product injuring itself and thus, no recovery in tort is available. Specifically, it asserts that the engine was an integral part of the airplane and that the damaged airframe is therefore not "other property." Defendant's Reply Memorandum at 7. Pratt & Whitney cites *East River* for the proposition that when a component part damages the machine into which it is incorporated, there is no "other property damage." *See East River*, 476 U.S. at 867, 106 S.Ct. at 2300. That proposition is true. However, a fuller reading of *East River* shows that the case does not support Pratt & Whitney's argument. In *East River*, the allegedly defective product was a steam reversing ring in a turbine that was manufactured by the defendant. The ring disintegrated and damaged the turbine but not other parts of the ship. The Court found that the product damaged only itself. *East River*, 476 U.S. at 867, 106 S.Ct. at 2300. The negative implication of that finding is that if damage occurred to other parts of the ship, "other property" would have been damaged.

Further, the predicate for the Court's finding that the product damaged only itself was a finding that the ring was a component of the turbine. That is not equivalent to finding that the ring was a component of the ship, yet that is the finding that Pratt & Whitney essentially asks us to make. Pratt & Whitney's position is that the incorporation of the allegedly defective bolts into a Pratt & Whitney engine and the incorporation of the engine into an Aerospatiale airframe makes the bolts a component of the airframe. However, we find that that position is foreclosed by the *East River* case, where the Supreme Court stated that the "defectively designed turbine components damaged only the turbine itself. Since each turbine was supplied by [the defendant] as an integrated package, each is properly regarded as a single unit." *East River*, 476 U.S. at 867, 106 S.Ct. at 2300. Here, Pratt & Whitney supplied each engine as an integrated package; hence, each engine is a single unit and damage to anything other than the engine is damage to "other property." We are not persuaded otherwise by *National Union Fire Ins. Co. v. Pratt & Whitney Canada, Inc.*, 107 Nev. 535, 815 P.2d 601 (1991) cited by Pratt & Whitney.

Based on the foregoing, we find that damage to the airframe is damage to "other property" and is compensable in tort. However, damage to the engine is not damage to other property and therefore, is not compensable in tort. Having established these principles, we must now determine which of the claimed damages are compensable in tort.[1]

■ Trans States seeks $278,617.16 for the cost of repairing the engine, $1,279,254.58 for the cost of repairing the airframe, $194,923.55 in lost revenues resulting from cancelled flights, and $22,500 it paid in settlement of personal injury claims. The cost of repairing the engine is not compensable under Trans States' negligence and strict liability theories. *East River*, 476 U.S. at 867, 106 S.Ct. at 2300 (holding that injury to the product itself is not compensable in tort). The costs for repairing the airframe will be compensable in tort, subject of course to proof of causation, liability of the defendant, and amount of damages. The lost revenues are economic losses that are not compensable in tort. *Id.*; *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 752, 435 N.E.2d 443, 449 (1982) (defining economic loss as including loss of profits). Damages for personal injuries are obviously recoverable under a negligence or strict liability theory.

Of course, no discussion of this topic would be complete without reference to *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). *Moorman* predated the Supreme Court's decision in *East River*, but it remains

---

1. Of course, any recovery at all is predicated upon Trans States proving liability on the part of Pratt & Whitney.

as a benchmark in Illinois law. *Moorman* was a case in which the product damaged only itself. *Id.* 61 Ill.Dec. at 753, at 450. Pratt & Whitney apparently overlooks that fact when it quotes the following passage from the opinion:

> When the defect causes an accident involving some violence or collision with external objects, the resulting loss is treated as property damage. On the other hand, when the damage to the product results from deterioration, internal breakage, or other non-accidental causes, it is treated as economic loss.

*Moorman,* 61 Ill.Dec. at 752, 435 N.E.2d at 449 (citations omitted). Pratt & Whitney argues that the damage here resulted from a gradual internal breakdown and thus, that the losses should be treated as economic losses. Defendant's Memorandum at 13. However, that argument overlooks that the passage above is defining "economic loss with respect to damage *to the product.* *Moorman,* 61 Ill.Dec. at 752, 435 N.E.2d at 449 (emphasis added).[2] Here, Trans States has alleged that the product damaged not only itself but also the airframe and also caused personal injuries. Thus, the violence versus deterioration distinction is not relevant here.

Assuming arguendo that such a distinction were relevant, we believe that there is sufficient evidence for a jury to find that an in-flight fire is a sudden and dangerous occurrence, even if the underlying cause was a gradual deterioration of engine bolts. Further, case law supports the proposition that a sudden and calamitous event can occur even where the underlying cause developed gradually. *See American Xyrofin, Inc. v. Allis-Chalmers Corp.,* 230 Ill.App.3d 662, 172 Ill. Dec. 289, 296, 595 N.E.2d 650, 657 (1992). The suddenness inquiry focuses on the suddenness of the occurrence of the event that results in injury, not the suddenness of the development of the defect. *Id., citing Unit-*

ed Air Lines, Inc. v. CEI Indus. of Illinois, Inc.,* 148 Ill.App.3d 332, 102 Ill.Dec. 1, 499 N.E.2d 558 (1986). Even a history of repairs prior to the occurrence of the event does not preclude a finding that the event causing injury was sudden and calamitous. *Id., citing Vaughn v. General Motors Corp.,* 102 Ill.2d 431, 80 Ill.Dec. 743, 466 N.E.2d 195 (1984). We note, though, that the Pratt & Whitney's alleged notification of Trans States regarding the need for maintenance action on the bolts may be relevant to determining or apportioning liability for damages.

In sum, we hold that, subject to proof of liability at trial, Trans States may recover damages under a strict liability or negligence theory for the repair of the airframe and amounts paid in settlement for personal injuries. Trans States may not recover under these theories the amount paid to repair the engine or lost revenues. Those damages can only be sought under Count II, which is a warranty theory.

## CONCLUSION

Pratt & Whitney moved for summary judgment on Counts I and III, which sound in negligence and strict products liability, on the grounds that economic loss damages are not compensable in tort. As stated above, we find that the lost revenues and the cost of repairing the engine are economic loss damages. Accordingly, we grant summary judgment to Pratt & Whitney as to those portions of Counts I and III but deny summary judgment as to the remaining damages sought under those counts, for personal injury and repair of the airframe.

---

2. We note with disappointment that this is not the only instance where Pratt & Whitney selectively quoted case language in a way that changed the meaning. Its reply memorandum purported to quote a passage from *Anderson Electric, Inc. v. Ledbetter Erection Corp.,* 115 Ill.2d 146, 104 Ill.Dec. 689, 691, 503 N.E.2d 246, 248 (1986), but omitted critical language from the beginning of the passage. *See* Defendant's Reply at 9. The omitted language states "when the damage results from a qualitative defect of the product and no person is injured or other property damaged, the resulting loss is purely economic." *Anderson,* 104 Ill.Dec. at 691, 503 N.E.2d at 248. It is clear that when the full passage is reviewed, it does not support Pratt & Whitney's position that the losses alleged here are purely economic.