**TRANS STATES AIRLINES (formerly Resort Air, Inc.) d/b/a Trans World Express, Plaintiff,**

v.

**PRATT & WHITNEY CANADA, INC., a subsidiary of United Technologies Corporation, a corporation, Defendant.**

No. 92–C–1658.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 10, 1995.

---

Hugh Gerard McBreen, McBreen, McBreen & Kopko, Chicago, IL, for plaintiff.

Michael H. West, Burke, Weaver & Prell, and Michael A. Pope, Pope, Cahill & Devine, Ltd., Chicago, IL, for defendant.

## *MEMORANDUM OPINION AND ORDER*

CASTILLO, District Judge.

This diversity case governed by Illinois substantive law involves a dispute between Trans States Airlines ("Trans States"), a commercial airline, and Pratt & Whitney Canada, Inc. ("Pratt & Whitney"), an airline engine manufacturer. Trans States has filed a three count complaint alleging theories of negligence, breach of warranty and strict liability. These causes of action arise out of the failure of a Pratt & Whitney model PW120 engine installed on an aircraft operated by Trans States. This failure resulted from the deterioration (corrosion) and fracture of certain bolts commonly known as ITD (Interstage Turbine Duct) bolts within the engine and caused an in-flight fire and engine shutdown on July 17, 1991, as the Trans States airplane attempted to land at the Peoria, Illinois airport. Damage to the engine and the airframe resulted from the fire.

On October 20, 1993, the Court[1] ruled that plaintiff, Trans States could seek recovery for damages to the airframe and for the amounts paid to settle with two passengers who claimed injury under theories of strict liability (Count I) and negligence (Count II). The Court also ruled, however, that Trans States could not recover the amounts paid to repair the defective engine and for lost revenue under these theories.

Trans States has filed a Motion to Reconsider the Court's prior ruling on the issue of whether lost revenues and engine repair costs can be recovered under the strict liabil-

ity and negligence theories alleged in Counts I and III. Trans States' Motion will be considered as falling under Federal Rule of Civil Procedure 60(b). *Cf. United States v. Deutsch,* 981 F.2d 299, 301 (7th Cir.1991). For the reasons given below, Plaintiff's Motion to Reconsider is granted. However, the Court's determination that plaintiff may seek recovery for lost profits and engine repairs under the strict liability and negligence theories in Counts I and III of the Complaint is subject to revision if the evidence at trial demonstrates that the engine failure was not the result of a "sudden and calamitous" breakdown, but a gradual deterioration of the ITD bolts. As will be explained in this order, the Moorman Doctrine permits recovery for damages under tort law only "for personal injury or property damage resulting from a sudden or dangerous occurrence" whereas the remedy for a "loss relating to a purchaser's disappointed expectations due to deterioration, internal breakdown or nonaccidental cause * * * lies in contract." *Moorman,* 91 Ill.2d at 86, 61 Ill.Dec. 746, 435 N.E.2d 443. *See also In re Illinois Bell Switching Station Litigation,* 161 Ill.2d 233, 240, 204 Ill.Dec. 216, 223, 641 N.E.2d 440, 443 (1994).

## LEGAL STANDARDS

As is the case for a motion to alter or amend a judgment under Rule 59(e), a motion for reconsideration brought under Rule 60(b) is not at the disposal of parties who want to "rehash" old arguments. *In re Oil Spill by Amoco Cadiz,* 794 F.Supp. 261, 267 (N.D.Ill.1992), *aff'd,* 4 F.3d 997 (7th Cir. 1993); *Quaker Alloy Casting v. Gulfco Indus. Inc.,* 123 F.R.D. 282, 288 (N.D.Ill.1988). Rather, Rule 60(b) authorizes a Court to grant relief from judgment for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ..., misrepresentation, or other misconduct of an adverse party; and (4) when the judgment is void; (5) the judgment has been satisfied,

---

1. This case was originally assigned to Judge Kocoras' calendar. By order of the Executive Committee, it was reassigned to this Court's calendar effective May 25, 1994.

released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. Fed.R.Civ.P. 60(b). Motions brought pursuant to Rule 60(b), "must be shaped by [these] specific grounds for modification or reversal ... they cannot be general pleas for relief." *Deutsch*, 981 F.2d at 301. Rule 60(b) relief " 'is an extraordinary remedy and is granted only in exceptional circumstances.' " *Harold Washington Party v. Cook County, Illinois Democratic Party*, 984 F.2d 875, 879 (7th Cir.1993) (quoting *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir.1984)); *see also Margoles v. Johns*, 798 F.2d 1069, 1073 (7th Cir.1986) ("[R]elief under Rule 60(b) is warranted only upon a showing of extraordinary circumstances that create a substantial danger that the underlying judgment was unjust").

Additionally, it bears repeating that the Court's opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting v. Gulfco Indus. Inc.*, 123 F.R.D. at 288. It also bears noting that this Court tends to apply these stringent standards when asked to reconsider the dispositive rulings of its colleagues in cases subsequently reassigned to this Court's calendar, *see, e.g., Williams v. Katz*, 1994 WL 405923 (N.D.Ill.), but has granted more latitude in cases where the Court is asked to reconsider a ruling on a pretrial motion which could inherently prejudice consideration of the case. *Charles v. Cotter*, 1994 WL 424144, *3 (N.D.Ill.).

In the instant case, Trans States' Motion for Reconsideration argues that the Court erred by holding that lost revenues and repair costs are "economic damages" and not compensable in tort under the "Moorman Doctrine." Trans States contends that "[o]nce the Court ... determined that plaintiff's damages include[d] claims for personal injury or physical damage to other property justifying the application of tort law, all of plaintiff's damages bec[a]me recoverable in tort." (Pls.' M–Rec. at 4).

After careful review, the Court has determined that Trans States has satisfied the Court's stringent standards for reconsideration, even though the Court is extremely reluctant to reconsider the decision of its colleague. Our determination is based on a reading of three cases: *Moorman*, 91 Ill.2d 69, 435 N.E.2d 443, 61 Ill.Dec. 746 (1982); *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986); and *American Xyrofin, Inc. v. Allis–Chalmers Corp.*, 230 Ill.App.3d 662, 595 N.E.2d 650, 172 Ill.Dec. 289 (2d Dist.1992). From these cases, we have concluded that, under Illinois law,

> if plaintiffs can succeed in proving the existence of a sudden and calamitous occurrence causing damage to surrounding property, recovery should include damages for any harm which proximately resulted from defendants' breach of their duty including damage to the [engine] and lost profits.

*See, e.g., American Xyrofin*, 230 Ill.App.3d at 672, 172 Ill.Dec. 289, 595 N.E.2d 650 (citing *Vaughn v. General Motors*, 102 Ill.2d 431, 436, 80 Ill.Dec. 743, 745, 466 N.E.2d 195, 197 (1984) and Dean Prosser, Torts § 101, at 665 (4th ed. 1971)). This determination is not made lightly; we do not simply disagree with the prior Court's ruling; we believe that Illinois case law compels the conclusion that a plaintiff can recover lost profits and repair costs under tort law when a product damages property other than itself. Trans States' Motion for Reconsideration of the Court's October 20, 1993, Memorandum Opinion and Order is therefore granted, and the partial summary judgment in favor of Pratt & Whitney is vacated.

## DISCUSSION

The Court's prior rulings were based, in large part, on the decision in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). In *East River*, defective turbine engines in several ocean liners caused many delays and necessitated numerous repairs. These engines were defective because a component part (i.e., a steam reversing ring) of the engine disintegrated, causing additional

damage to the turbine engine. Although the defective engine did not damage any other part of the ship, the plaintiffs sought lost profits as an element of damages due to the delays caused by repairing the engines. The Supreme Court held that when a defective product purchased in a commercial transaction malfunctions, injuring only the product itself and causing purely economic loss, tort law will not compensate that loss. *Id.* at 865–868, 106 S.Ct. at 2299–2301. However, the Supreme Court also noted that in traditional "property damage" cases, the defective product damages other property. In *East River,* the plaintiff's claim for lost profits was not compensable under a tort law theory because there was no damage to "other" property.

In the present case, the Court picked up on this dicta, and reading *East River* in tandem with *Moorman Manufacturing Co. v. National Tank Co.,* 91 Ill.2d 69, 435 N.E.2d 443, 61 Ill.Dec. 746 (1982), and *American Xyrofin, Inc.,* 230 Ill.App.3d 662, 595 N.E.2d 650, 172 Ill.Dec. 289 (2d Dist.1992), held that the defective engine in the Trans States' aircraft *suddenly* malfunctioned,[2] causing fire damage to property other than the engine itself, namely, to the airframe of the plane. Consonant with the rulings in *Moorman* and *American Xyrofin,* the Court held that damage to property other than the defective product (and personal injury claims resulting from this defect) may be compensated by tort law under *Moorman* and its progeny. However, the Court drew a line between personal injury and traditional property damage, as described above, and economic losses resulting from this property damage,

such as lost revenues and the engine repair costs.

This Court does not believe that *Moorman* and *American Xyrofin* support this distinction. In fact, in *American Xyrofin,* an Illinois Appellate Court, relying on *Moorman,* expressly stated that,

> if plaintiffs can succeed in proving the existence of a sudden and calamitous occurrence causing damage to surrounding property, recovery should include damages for any harm which proximately resulted from defendants' breach of their duty including damage to the [engine] and lost profits.

*American Xyrofin,* 230 Ill.App.3d at 672, 172 Ill.Dec. 289, 595 N.E.2d 650 (citing *Vaughn v. General Motors,* 102 Ill.2d 431, 436, 80 Ill.Dec. 743, 745, 466 N.E.2d 195 (1984)). In addition, both the Illinois Supreme Court in *Vaughn* and the Illinois Appellate Court in *American Xyrofin* rely on Dean Prosser's conclusion that,

> There can be no doubt that the seller's liability for negligence covers any kind of physical harm, including not only personal injuries, but also property damage to the defective chattel itself * * *.

Prosser, Torts § 101, at 665 (4th ed. 1971).

The Court previously ruled, and the parties do not dispute, that Illinois law applies to this diversity case. As a diversity case, this Court is bound to anticipate how the Illinois Supreme Court would rule in a case, unlike *Moorman,* where a defective product injures property other than itself and causes economic loss such as lost revenues. We believe that the holdings in *American Xyrofin* [3] and

---

**2.** Pratt & Whitney has alleged in its Motions In Limine that the ITD bolts in the engine deteriorated over a period of time and that Trans States had notice of this deterioration. Gradual deterioration of the ITD bolts prior to the accident would take this case out of the *Moorman* exception for "sudden and dangerous occurrences" and limit Trans States to its contractual remedies (i.e., its breach of warranty damages in Count II). In other words, under *Moorman,* if the evidence at trial shows that the engine failure was not "sudden" (although it certainly was calamitous), then Trans States will not be able to recover damages for its economic loss (lost revenues and engine repairs) under the tort law theories alleged in Counts I and III, but will be

limited to contract damages. *See Moorman,* 91 Ill.2d at 86, 61 Ill.Dec. 746, 435 N.E.2d 443.

**3.** Pratt & Whitney cites *Coleman Cable Systems v. Shell Oil Company,* 847 F.Supp. 93 (N.D.Ill. 1994), solely for the purpose of contesting the Court's ruling on October 20, 1993, that the engine and the airplane were not a "single product." Judge Kocoras found, as this Court does, that the engine was a component part of the airplane and that the airframe was "other" property. Trans States mischaracterizes Pratt & Whitney's use of *Coleman* when it asserts that *Coleman* was cited as support for the claim that even where there is damage to other property, the costs associated with repair of the defective product itself and consequential lost profits are

*Vaughn v. General Motors* are the law we must apply to the damages issues in Counts I and III.

## CONCLUSION

Therefore, the Court concludes that not only are property and personal injury damages available under the tort theories alleged in Counts I and III, but lost revenues and the engine repair costs may also be recovered. Accordingly, the Clerk of the Court is directed to **VACATE** the partial summary judgment entered in favor of Pratt & Whitney on Counts I and III on October 20, 1993, and to **GRANT** Trans States' Motion to Reconsider that decision. This order is certified for interlocutory appeal pursuant to 28 U.S.C. Section 1292(b).

not recoverable in tort. *Coleman* involved a single product, as Pratt & Whitney recognized.

This decision is therefore not relevant to the holding in *American Xyrofin*.