**TRANS STATES AIRLINES,**
**Plaintiff–Appellee,**

v.

**PRATT & WHITNEY CANADA,**
**INC., Defendant–Appellant.**

No. 95–2896.

United States Court of Appeals,
Seventh Circuit.

Submitted June 19, 1997.

Decided Nov. 21, 1997.

Hugh G. McBreen (submitted), Annie K. Strobl, McBreen, McBreen & Kopko, Chicago, IL, for Plaintiff–Appellee.

Michael A. Pope, Daniel J. Collins, Phelan, Cahill & Quinlan, Chicago, IL, James D. Dasso, Foley & Lardner, Chicago, IL, for Defendant–Appellant.

Before COFFEY, DIANE P. WOOD, and EVANS, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Trans States Airlines began this suit in 1992 with a complaint in the Northern District of Illinois against Pratt & Whitney Canada, Inc., seeking damages that arose from the July 17, 1991, catastrophic failure of the left engine (manufactured by Pratt & Whitney) on an aircraft Trans States was leasing, as the airplane approached the Greater Peoria Airport in Illinois. Fortunately, the pilot was able to regain control of the plane and to land safely, but the engine failure resulted in damage to the engine itself and to the airframe in which it was housed. In addition, two passengers suffered minor personal injuries, and Trans States lost revenues from canceled flights. Trans States relied on three theories in its complaint: (1) negligence, (2) breach of warranty, and (3) strict liability.

Pratt & Whitney moved for summary judgment, claiming that the Illinois economic loss doctrine barred recovery by Trans States. Two different district judges rejected that argument. *See Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 836 F.Supp. 541 (N.D.Ill.1993) (Kocoras, J.); *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 875 F.Supp. 522 (N.D.Ill.1995) (Castillo, J.). Judge Castillo, however, certified the following question to this court under 28 U.S.C. § 1292(b):

> [W]hether PWC's gas turbine engine and the Aerospatiale airframe were an integrated unit of the Trans States airplane, under the economic loss doctrine set forth in the Supreme Court's decision in *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986).

We agreed that the scope of Illinois's economic loss doctrine was a "controlling question of law as to which there is substantial ground for difference of opinion," in the words of § 1292(b), and that immediate appeal was likely materially to affect the ultimate disposition of the case, and we therefore accepted the appeal. Upon further consideration, we decided also that Illinois law, which all agree governs here, was sufficiently uncertain that we should seek guidance from the Illinois Supreme Court under that Court's certification procedure. See Ill. Sup.Ct. R. 20. We did so, explaining our decision in an opinion published at 86 F.3d 725 (7th Cir.1996).

The Illinois Supreme Court agreed to decide the certified questions presented in our opinion, which it summarized as follows:

> (1) For purposes of the economic loss doctrine, as developed by the Illinois Supreme Court in *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982) and its progeny, does Illinois recognize a "sudden and calamitous occurrence" exception to the doctrine under which recovery in tort is possible for injury to the single product?
>
> (2) Can a product and one of its component parts ever constitute two separate products?
>
> (3) Did the airframe and the engine that failed in this case·constitute a single product or two distinct products?

*Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 177 Ill.2d 21, 224 Ill.Dec. 484, 485, 682 N.E.2d 45, 46 (1997) (brackets in original omitted). In the balance of this opinion, we assume familiarity with both our decision certifying these questions to the Illinois Supreme Court and that Court's opinion answering the questions. We review here only the highlights of both.

The Illinois Supreme Court began by noting that "[g]enerally speaking, a defective product can cause three types of injury: personal injury, property damage, and economic loss." *Id.* at 487, 682 N.E.2d at 48. Economic loss, in turn, it defined as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." *Id.* (citations and emphasis omitted). It concluded that, at least in the commercial context, a claim to recover for injury to the product itself is essentially a complaint about disappointed expectations—a contract notion. *Id.* at 491, 493, 682 N.E.2d at 52, 54. But see *id.* at 492–93, 682 N.E.2d at 53–54 (reserving

judgment for the consumer context). Following the majority rule exemplified by the United States Supreme Court's decision in *East River, supra,* the Illinois Supreme Court also held that tort recovery is precluded for economic losses even if the injury occurred from a sudden and calamitous event. *See id.* at 493, 682 N.E.2d at 54.

Turning to the remaining two questions (which had been expressed as one in our opinion certifying the case to the Illinois Supreme Court), the Court noted that the key question is the methodology by which products are characterized as one or several. See *id.* at 494–95, 682 N.E.2d at 55–56. Trans States had argued that "the manner in which the parties treated the products should be dispositive," *id.* at 494, 682 N.E.2d at 55, while Pratt & Whitney urged that the focus of inquiry should be on what the parties "bargained for." *Id.* at 495, 682 N.E.2d at 56. The Court was persuaded by the latter approach, both for reasons of administrative ease and because an inquiry into the bargain was more consistent with the contractual basis of the economic loss doctrine. *Id.* at 497, 682 N.E.2d at 58. The sublease agreement between Trans States and its lessor made clear that Trans States had received a fully integrated aircraft, complete with engine. *Id.* Thus, the Court stated that on these facts it would not be correct to view the engine and the airframe as two separate products, even though in other circumstances the bargain between the parties might support a finding that the products were separately bargained for. Justices Heiple, Harrison, and McMorrow dissented in part, because they thought the ultimate characterization of the engine and airframe here did not present an appropriate question of law for the certification process. *Id.* at 498, 682 N.E.2d at 59.

Upon receiving the Illinois Supreme Court's decision, we invited the parties to submit statements of position indicating what action they thought this court should now take. Trans States argued that this court should pay heed to the three dissenting justices and that we should regard the question "What did the parties bargain for?" as open for further proceedings on remand. It also suggested that the case must be remanded

for resolution of the contribution claim for payments to an injured passenger, since this plainly did not involve "economic loss" as the Illinois Supreme Court has now authoritatively defined that term. *Cf. id.* at 487, 682 N.E.2d at 48. Pratt & Whitney argued that the case should be remanded to the district court and dismissed for want of subject matter jurisdiction. Before the § 1292(b) appeal took place, the district court had ruled that Pratt & Whitney's limited warranty, which disclaimed liability for consequential damages and which was also otherwise limited in time and scope, was not unconscionable. *Trans States Airlines v. Pratt & Whitney Canada, Inc.,* No. 92–C–1658, 1995 WL 59235, at *3 (N.D.Ill. Feb. 10, 1995). According to Pratt & Whitney, because the warranty had long since expired by its own terms at the time of the accident, the only remaining area of dispute was the $12,500 contribution claim to which Trans States referred-an amount obviously below the jurisdictional amount required by 28 U.S.C. § 1332.

■ As an initial matter, we agree with Pratt & Whitney that the Illinois Supreme Court's opinion has definitively resolved the question whether there is one product or two in the case before us, and it has found that there is only one. Coupled with the rule of law on the economic loss doctrine announced by that Court, *Trans State's* claims based on negligence and products liability (counts I and III) must be dismissed. However, neither this court nor the Illinois Supreme Court had before it any arguments relating to the warranty claim. The mere fact that the district court ruled in favor of Pratt & Whitney on the conscionability of the limited warranty's time and scope does not persuade us to resolve any questions relating to the warranty at this time, particularly without full briefing from both sides. *Cf. id.* (district court's caveat that certain remaining questions about the warranty remained open subject to additional evidence). We therefore decline Pratt & Whitney's invitation to do so.

■ We also reject Pratt & Whitney's argument that diversity jurisdiction is no longer proper. This suggestion misstates the rule with respect to federal subject matter jurisdiction. Both diversity of citizenship

and the allegations relating to the amount in controversy are matters that are determined at the commencement of a suit in federal court. *See Moore v. Ashland Oil, Inc.,* 901 F.2d 1445, 1448 (7th Cir.1990); 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3608 at 448–49 (2d ed.1984) (citizenship). *See Grinnell Mut. Reinsurance Co. v. Shierk,* 121 F.3d 1114, 1116 (7th Cir.1997); 14A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3702 at 28–32 (2d ed.1985) (amount in controversy). Nothing that has happened since Trans States filed this case casts any doubt on the genuineness of its initial allegations regarding the amount in controversy, even if, after numerous judicial decisions, it now appears that it will not recover on most of its claims.

We therefore VACATE the district court's earlier rulings on the negligence and product liability claims presented here and REMAND for further proceedings consistent with this opinion. The costs of the appeal shall be taxed against Trans States.